**Below is a Memorandum Decision of the Court.**

*Mary Jo Heston*

**Mary Jo Heston**
**U.S. Bankruptcy Judge**

**(Dated as of Entered on Docket date above)**

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| In re:<br><br>JAN W SCHMALENBERG and<br>BARBARA A SCHMALENBERG,<br><br>Debtors. | Case No. 12-45274 |
| JAN W SCHMALENBERG and BARBARA SCHMALENBERG,<br><br>Plaintiffs,<br><br>v.<br><br>SUNWEST BANK, a banking corporation under the laws of the State of California, and TIMBERLAND BANK, a banking corporation under the laws of the State of Washington,<br><br>Defendants. | Adversary No. 20-04001<br><br>**MEMORANDUM DECISION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

On September 17, 2020, the Court heard the Motion for Partial Summary Judgment for Sunwest Bank to Disgorge Undisclosed *Preconfirmation* Excess Fees and Charges filed by Jan and Barbara Schmalenberg ("Schmalenbergs," "Debtors" and/or "Plaintiffs"), and Sunwest Bank's ("Sunwest") Motion for Summary Judgment seeking dismissal of the

Schmalenbergs' First Amended Complaint with prejudice. The Court took the matters under advisement. Based on the evidence, arguments of counsel, and pleadings submitted, the Court makes the following findings of fact and conclusions of law.[1]

## II. FINDINGS OF FACT

**A.  Evidentiary Issues.**

As a preliminary matter, both parties requested in their responsive pleadings that documents filed in support of the other party's respective motions be stricken. The Schmalenbergs sought to strike the email thread attached as Exhibit 1 to the Donahue Decl., ECF No. 71. Sunwest sought to strike the report prepared by Richard Peterson, CPA, attached as Exhibit D to Schmalenberg's Supp. Decl., ECF No. 89 ("Peterson Report"). Neither party filed a separate motion to strike. The Court, however, heard argument on both requests at the September 17, 2020 hearing and rendered oral rulings, which the Court incorporates herein.

### 1.  Peterson Report.

Jan Schmalenberg describes Peterson in his supplemental declaration as a "forensic accounting expert." Schmalenberg Supp. Decl. 2:10, ECF No. 89. Sunwest moved to strike the Peterson Report arguing that it should not be considered on the cross-motions for summary judgment because Peterson does not qualify as an expert and his report does not qualify as an expert report. Sunwest cites to Fed. R. Evid. 702 and the U.S. Supreme Court decision of *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). The Court agrees with Sunwest.

---

[1] Both parties have consented to entry of final orders or judgments by the bankruptcy court in this adversary proceeding. *See* Local Rules W.D. Wash. Bankr. 7012-1(a) and (c); 28 U.S.C. § 157 and § 1334(b).

As indicated by the Court at the hearing and for the additional reasons stated by the Court on the record, the Schmalenbergs have failed to establish that the Peterson Report should be considered under Fed. R. Evid. 702. According to Rule 702, a witness who is qualified as an expert may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue, (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles or methods to the facts of the case.

The Peterson Report is very brief and provides little information regarding the information Peterson relied upon and methods he used to form his opinion. In addition, no foundation was provided as to his qualifications as an expert, although it is likely that this foundation could be established for purposes of trial if necessary. For purposes of summary judgment, however, as already ruled by the Court at the hearing, the Schmalenbergs have failed to establish that he is qualified as an expert and that his opinion will assist the Court in understanding the evidence or in determining any facts at issue.

**2. Settlement Emails.**

In support of their Motion for Summary Judgment, Sunwest attached to their legal counsel Terry Donahue's Declaration an email string from April 14—May 14, 2015, concerning settlement negotiations with Mr. Donahue and the Schmalenbergs' two legal counsel at that time, Ben Ellison and Noel Shillito. Donahue Decl. Ex. 1, ECF No. 71. In their pleadings and at the September 17, 2020 hearing, the Schmalenbergs requested the Court exclude this evidence under Fed. R. Evid. 408 as statements made during compromise negotiations offered "to prove or disprove the validity or amount of a disputed claim[.]" Fed. R. Evid.

408(a). The Schmalenbergs argued that the emails do not reflect an integrated and mutual agreement, but if the Court determined they did, Sunwest should be held to its terms. In its pleadings, Sunwest in turn argued that the emails were offered for "another purpose" under Fed. R. Evid. 408(b): (1) to show that the Schmalenbergs were aware that Sunwest was seeking to collect accrued interest and the dollar amounts Sunwest considered owing; and (2) to show that the Schmalenbergs were aware these amounts were not part of the ongoing bankruptcy payments but were to be collected at the end of the loans. At the hearing, the Schmalenbergs acknowledged exceptions permitting admission of evidence under Fed. R. Evid. 408(b).

An unaccepted settlement offer ordinarily is not admissible evidence to show either the existence or amount of liability. *Cheyenne River Sioux Tribe v. United States*, 806 F.2d 1046, 1050 (Fed. Cir. 1986); Fed. R. Evid. 408(a). Fed. R. Evid. 408(b), however, provides that such evidence is admissible for "another purpose," such as "negating a contention of undue delay[.]" The court has "broad discretion" as to whether to admit such evidence and should weigh the need for the evidence against the possibility of discouraging future settlement negotiations. *Trebor Sportwear Co. v. The Ltd. Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989).

Sunwest argued that the emails were admissible to negate the Schmalenbergs' argument of undue delay in providing the preconfirmation accrued interest amounts, citing *PRL USA Holdings, Inc. v. U.S. Polo Ass'n, Inc.*, 520 F.3d 109, 114—15 (2d Cir. 2008), and to prove estoppel, citing *Bankcard Am., Inc. v. Universal Bancard Sys., Inc.*, 203 F.3d 477, 484 (7th Cir. 2000). The Court agrees and thus ruled that the emails, while not admissible for purposes of establishing the amount of the accrued interest, were admissible for the other

purposes articulated by Sunwest—that the Schmalenbergs were aware of the fact of accrued interest and that this interest would be collected at the end of the loans.

### 3. January 26, 2015 Schmalenberg Note.

In support of their Motion for Partial Summary Judgment and opposition to Sunwest's cross-motion, the Schmalenbergs rely on a note or an email dated January 26, 2015, allegedly sent from Mr. Schmalenberg to "Peter Lofgrin [sic]," instructing Mr. Lofgren to provide him any "costs/charges/present value" prior to any renewal of the secured notes ("Note"). Schmalenberg Decl. Ex. B, ECF No. 67; Schmalenberg Supp. Decl. Ex. B, ECF No. 89. Sunwest disputes the admissibility of this evidence because the Schmalenbergs have not authenticated it. Specifically, the Note shows no hallmarks of an actual correspondence to another individual or entity—no to/from line; no email header; and no indication it was sent to Sunwest. Sunwest's Mot. Summ. J. 16:15—18, ECF No. 69. Sunwest represents that it has no record of this correspondence. Sunwest's Mot. Summ. J. 17:3—4, ECF No. 69.

A trial court can only consider admissible evidence in ruling on a motion for summary judgment. Fed. R. Civ. P. 56(e). "The requirement of authentication . . . as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a); *Giulio v. BV CenterCal, LLC,* 815 F.Supp.2d 1162, 1168—69 (D. Or. 2011). Evidence that is not properly authenticated will not be considered by the court when reviewing a motion for summary judgment. *Orr v. Bank of America*, *NT &* SA, 285 F.3d 764, 773 (9th Cir. 2002).

The parties did not raise this issue at the September 17, 2020 hearing. Based on the record before it, the Court finds that the Note has not been properly authenticated for the reasons articulated by Sunwest and thus is not admissible for purposes of the cross-motions

for summary judgment. Additionally, for reasons set forth in this Memorandum Decision, even if the Court admitted this evidence, it would have no effect on the resolution of the cross-motions before it.

**B.    Undisputed Facts.**

The material facts relevant to the Court's decision are undisputed.    Below is a chronology of the key dates and events in this case.

**July 30, 2012:** The Schmalenbergs file a voluntary chapter 11 bankruptcy petition listing 36 outstanding loans with various commercial banks including 9 obligations to Westside Community Bank ("Westside").

**December 31, 2012:** Westside files Claim No. 12-1 ("Claim No. 12") in the amount of $1,028,124.33, of which $836,412.34 is designated as secured and $191,711.99 as unsecured.

**January 11, 2013:** The FDIC is named as receiver for Westside.  Sunwest acquires all of Westside's contractual rights from the FDIC, including the Schmalenbergs' loans.  The loan agreements contractually obligated the Schmalenbergs to pay attorneys' fees and late fees. The three promissory notes contained substantially identical provisions expressly allowing the lender to include a 5% late fee on any unpaid balances (and default interest of 15%).   The loan documents further provided that the "Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them." Haden Decl. 2:25—26 & Ex 1, ECF No. 70.

**September 29, 2014:** The Court enters an Order Confirming Second Amended Chapter 11 Plan Dated August 26, 2013 ("Confirmed Plan" and "Confirmation Order").  ECF No. 446 (Bankr. Case No. 12-45274).  The Confirmation Order amends the earlier filed plan dated August 26, 2013 and addresses each of Sunwest's secured claims: Class II-M

designated as loan no. xxxx-4103, Class II-I designated as loan no. xxxx-4012, and Class II-L designated as loan no. xxxx-5393, which is an obligation of JS&MH, LLC. For each of these secured claims, the Confirmation Order provides that "the loan will be extended for a term for five (5) years from October 2013 through the end of September 2018, at 6%, with principal and interest payments based upon a 25 year amortization." Conf. Order 6:5—6, 15—16 and 7:1—2, ECF No. 446. For the Class II-M and Class II-I loans, the Confirmation Order further states that "Sunwest shall provide a current payoff providing outstanding principal, interest, default interest, fees and costs." Conf. Order 6:8—9, 22—23. The Confirmation Order also includes a reservation of rights for the Schmalenbergs to pursue an offset for the unsecured loan with Sunwest. Conf. Order 7:19—23, ECF No. 446.

**November 14, 2014:** The Schmalenbergs execute a Change in Terms Agreement for the Class II claims memorializing the principal and interest only payments set forth in the Confirmed Plan and indicating the final payoff will include all accrued interest not yet paid. No additional legal fees are disclosed. Each Change in Terms Agreement has a "Cross-Collateralization" clause, as well as a "Continuing Validity" clause providing: "Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect." Haden Decl. Ex. 3, ECF No. 70; Ellison Decl. Ex. A, ECF No. 65.

Peter Lofgren, Sunwest's Vice President and special creditors officer until October 23, 2016, prepares an Interoffice Memo ("Memo") to Glenn Chesire, Senior Vice President, indicating that there are fees, interest, and legal expenses the court has indicated Sunwest has a right to collect on the three Schmalenberg loans. The Memo further states that based on the confirmed bankruptcy plan, the Schmalenbergs will begin making "P&I" payments on

all notes, and the past due interest and fees will be added to the end of the notes for collection at maturity.  Haden Decl. Ex. 4, ECF No. 70; Ellison Decl. Ex. D, ECF No. 65.

**November 28, 2014:** Article VI, paragraph B of the Schmalenbergs' Confirmed Plan requires that an objection to claim be filed within 60 days of confirmation, or 60 days after a deficiency claim is filed, whichever is later.  This period expired on November 28, 2014 and no objection to Sunwest's Claim No. 12 was filed.

**December 31, 2014:** The Schmalenbergs' bankruptcy case is closed.

**January 29, 2015:** Mr. Lofgren prepares Demand Statements for the Class II loans. Ellison Supp. Decl. Ex. 1 and Ex. 2 70:12—15, ECF No. 90.  For the Class II-L loan xxxx-5393, the Demand Statement lists a total to pay in full of $68,263.13, including interest as of 01/29/15 of $7,602.34; reconveyance fee of $75.00; demand fee of $30.00; and late charges of $353.32. It does not include any amounts for attorneys' fees.

For the Class II-I loan xxxx-4012, the Demand Statement lists a total to pay in full of $642,909.55, including interest as of 01/29/15 of $70,755.12; reconveyance fee of $150.00; demand fee of $30.00; late charges of $11,564.85; title charges of $190.65; legal fees of $1,495.00; and appraisal fee of $750.00.

For the Class II-M loan xxxx-4103, the Demand Statement lists a total to pay in full of $242,727.19, including interest as of 01/29/15 of $16,714.07; reconveyance fee of $75.00; and demand fee of $30.00.  It does not include any amounts for attorneys' fees.

**April 14—May 14, 2015:** Parties engage in settlement negotiations regarding the amounts owing for the Class II-I loan xxxx-4012 and Class II-M loan xxxx-4103, including the amounts of accrued interest that will be owed upon maturity of the loans.  Donahue Decl. Ex. 1, ECF No. 71.

**July 16, 2015:** The Schmalenbergs' bankruptcy case is reopened to pursue the Debtors' Motion to Set-Off, Recoup, or Equitably Disallow Claim No. 12.

**September 17, 2015:** The Court enters a Memorandum Decision and Order Denying Debtors' Objection to Claim No. 12. ECF Nos. 499 and 500 (Bankr. Case No. 12-45274).

**October 1, 2015:** The Schmalenbergs file a Motion for Reconsideration of Court's September 17, 2015 Memorandum Decision.

**January 27, 2016:** The Court enters a Memorandum Decision and Order Denying Alter Ego Theory in Support of Debtors' Objection to Claim No. 12. ECF Nos. 536 and 537 (Bankr. Case No. 12-45274).

**July 12, 2016:** Letter from Sunwest's counsel to Schmalenbergs' counsel stating:

Sunwest Bank has approached Mr. Schmalenberg about addressing the outstanding attorneys' fees and costs as part of its secured claim. Mr. Schmalenberg appears to be unwilling to discuss such. If that issue cannot be resolved, I am reviewing the matter for purpose of a default and my additional fees will be added to the outstanding amount owing.

Haden Decl. Ex. 6, ECF No. 70; Donahue Decl. Ex. 2, ECF No. 71.

**September 29, 2016:** The Confirmed Plan required that unsecured claims be paid in full two years from the date of confirmation. Conf. Plan Art. V.B.6, ECF No. 446 (Bankr. Case No. 12-45274). This period expired September 29, 2016, and the unsecured debt was not paid.

**December 5, 2016:** The Schmalenbergs' bankruptcy case is re-closed.

**December 21, 2016:** Ticor Title Company sends a Payoff Request to Sunwest Bank for the Class II-M loan xxxx-4103. Schmalenberg Supp. Decl. Ex. A, ECF No. 89.

**December 29, 2016:** Sunwest prepares a Demand Statement for the Class II-M loan xxxx-4103, listing a total to pay in full of $237,104.68, including interest to 12/30/2016 of

$725.00; "interest waived payoff as of 4/29/15" of $4,231.98; reconveyance fee of $75.00; and demand fee of $30.00. The Demand Statement specifies that the payoff figures are subject to final verification by Noteholders. It does not include any amounts for attorneys' fees. Schmalenberg Supp. Decl. Ex. C, ECF No. 89.

**August 3, 2017:** The Schmalenbergs file another Motion to Reopen Chapter 11 Case to resolve a dispute with Heritage Bank.

**October 2, 2017:** Letter from Sunwest's counsel to the Schmalenbergs' counsel providing "notice of event of default as required by Paragraph J" of the Confirmed Plan regarding the Class VI general unsecured claims. Haden Decl. Ex. 7, ECF No. 70.

**October 4, 2017:** Letter from Sunwest's counsel to the Schmalenbergs' counsel providing "notice of event of default as required by Paragraph J" of the Confirmed Plan for failure to make payments on the Class II-L loan held by JS MH Properties, LLC. Haden Decl. Ex. 8, ECF No. 70.

**November 7, 2017:** Sunwest prepares a complaint against the Schmalenbergs that is filed in Pierce County Superior Court (Unsecured Claims Lawsuit) under case number 17-2-13696-0 for failure to make payments on the Class VI general unsecured claims as required by the Confirmed Plan and the Confirmation Order. Haden Decl. Ex. 9, ECF No. 70.

**January 11, 2018:** In response to the Schmalenbergs' request for a final payoff figure for all three Class II secured claims, Sunwest provides Demand Statements for each loan. The legal fees in the Demand Statements total $91,156.75. Haden Decl. Ex. 12, ECF No. 70.

**January 24, 2018:** Sunwest issues another set of Demand Statements for each of the Class II secured claims to Chicago Title Company of Washington. These statements also set forth $91,156.75 in total legal fees. Haden Decl. Ex. 13, ECF No. 70.

For the Class II-I loan xxxx-4012, the Demand Statement lists a total to pay in full of $569,441.75, including the following:

| | |
|---|---|
| Principal Balance | $457,828.28 |
| Interest to 2/1/18 | $1,363.52 |
| Title Charges | $190.65 |
| Interest Waived Added to Payoff as of 4/29/15 | $20,050.73 |
| Legal Fees | $1,495.00 |
| Appraisal Reimbursement-credit GL 9300068 | $750.00 |
| Demand Fee | $30.00 |
| Late Charges Waived and put to payoff charges per renewal | $5,699.21 |
| Reconveyance Fee | $75.00 |
| Legal Expenses -collect at payoff and credit GL 8700056 | $51,959.36 |

For the Class II-M loan xxxx-4103, the Demand Statement lists a total to pay in full of $264,627.75, including the following:

| | |
|---|---|
| Principal Balance | $226,764.08 |
| Interest to 2/1/18 | $783.19 |
| Interest waived added to payoff as of 4/29/15 | $4,231.98 |
| Reconveyance Fee | $75.00 |
| Demand Fee | $30.00 |
| Legal Expense Fee | $32,743.50 |

For the Class II-L loan xxxx-5393, the Demand Statement lists a total to pay in full of $71,001.23, including the following:

| | |
|---|---|
| Principal Balance | $53,756.46 |
| Interest to 2/1/18 | $132.55 |
| Late Charge | $676.20 |
| Late Fee Deferred to end of loan per court | $334.00 |
| Demand Fee | $30.00 |
| Reconveyance Fee | $75.00 |
| Interest Waived Added to payoff per renewal of 11/14/14 | $9,543.13 |
| Legal Fee | $6,453.89 |

**January 25, 2018:** Email from Debtor Jan Schmalenberg to Michael Haden acknowledging receipt of the Demand Statements and stating that they "are about $150K more than expected for all three." Debtor further states that "we will ask the Court to resolve

these issues, so when they are really due, they can be financed." Haden Decl. Ex. 14, ECF No. 70.

**March 6, 2018:** The Schmalenbergs resolve the Unsecured Claims Lawsuit by executing a Forbearance Agreement and Confession of Judgment, pursuant to which Sunwest agreed to forbear from taking collection efforts on the unsecured loans until August 31, 2018.[2] Haden Decl. Exs. 10 and 11, ECF No. 70.

**April 17, 2018:** The parties stipulate to dismissal of the Unsecured Claims Lawsuit with prejudice by agreed order. Donahue Decl. Ex. 3, ECF No. 71.

**May 2, 2018:** The Schmalenbergs pay off the secured Class II-M loan by wire transfer in the amount of $263,378.58. Pursuant to the Loan Payoff Statement dated May 2, 2018, the payoff amount includes "INTEREST WAIVED ADDED TO PAYOFF AS OF 04/29/15" of $4,231.98 and a "LEGAL EXPENSE FEE" of $32,743.50. Haden Decl. Ex. 16, ECF No. 70. The Schmalenbergs did not reserve any rights as to the amounts paid. Sunwest released its liens in the collateral securing the obligation. Haden Decl. 13:24—25, ECF No. 70.

**May 25, 2018:** Letter from the Schmalenbergs' counsel to Sunwest's counsel raising concerns about the amount of the legal fees and other charges set forth in the January 24, 2018 Demand Statements. Haden Decl. Ex. 17, ECF No. 70.

**June 1, 2018:** Response from Sunwest's counsel to the Schmalenbergs' counsel challenging the Schmalenbergs' statement that such fees were "unexpected" and setting forth Sunwest's explanation as to why the fees and other charges were permissible, including directing counsel to the loan documents and Confirmation Order. Donahue Decl. Ex. 5, ECF No. 71.

---

[2] The Forbearance Agreement lists August 31, 2018, while the Confession of Judgment lists both August 30 and August 31, 2018, as the forbearance date.

**July 19, 2018:** The Schmalenbergs file a Complaint for Declaratory Relief and Damages in Pierce County Superior Court Case No. 18-2-09929-9 ("Declaratory Action"), seeking nearly identical relief to what is being sought in the current adversary proceeding. Haden Decl. Ex. 19, ECF No. 70.

**August 24, 2018:** Sunwest provides Demand Statements for the two remaining secured loans identified as Class II-I xxxx-4012 and Class II-L xxxx-5393. These Demand Statements contain deferred interest, late charges, and attorneys' fees and costs in the final payoff amounts. For the Class II-I loan xxxx-4012, the total payoff is $563,335.11, with the same amounts in the January 24, 2018 Demand Statement except for the following:

| | |
|---|---|
| Principal Balance | $481,432.22 |
| Interest to August 31, 2018 | $1,265.94 |
| Recording of Reconveyance | $127.00 |
| Recording of Assignment of Lease and Rent Release | $130.00 |
| Recording of Hazardous Release | $130.00 |

For the Class II-L loan xxxx-5393, the total payoff is $70,205.34, with the same amounts in the January 24, 2018 Demand Statement except for removal of the $75 reconveyance fee and changes to the following:

| | |
|---|---|
| Principal Balance | $52,911.19 |
| Interest to August 31, 2018 | $121.69 |
| Late Charges | $811.44 |

Haden Decl. Ex. 20, ECF No. 70.

**August 29, 2018:** The Schmalenbergs voluntarily dismiss the Declaratory Action. Haden Decl. 15, ECF No. 70; Donahue Decl. 6, ECF No. 71.

**August 31, 2018:** The Schmalenbergs wire transfer Sunwest the payoff on the Class II-I and Class II-L loans. The total payoff on the Class II-I loan xxxx-4012 is $563,572.53, including legal fees, accrued interest, and late charges. The total payoff on the Class II-L loan

xxxx-5393 is $70,248.84, including legal fees, default interest, and late charges.  Haden Decl. Ex. 20, ECF No. 70.  The Schmalenbergs do not reserve any rights as to the amounts paid. Sunwest releases its collateral securing the loans.  Haden Decl. 16:1—3, ECF No. 70.

**December 10, 2019:** The Schmalenbergs' bankruptcy case is re-opened to hear the Schmalenbergs' motion for entry of a chapter 11 discharge.

**December 23, 2019:** The Schmalenbergs' counsel files a letter requesting the Court keep their case open after the discharge is entered in order to pursue an adversary proceeding to recoup inflated pay-off amounts made to creditors.  ECF No. 598 (Bankr. Case No. 12-45274).  Sunwest files a letter in opposition.  ECF No. 599 (Bankr. Case No. 12-45274).

**January 21, 2020:** The Schmalenbergs file the current adversary proceeding alleging one cause of action for breach of contract and damages.

**January 20, 2020:** Defendants Sunwest and Timberland Bank each file an Answer, Defenses, Affirmative Defenses and Counterclaims.

**January 22, 2020:** The Court enters a Stipulated Order Re Entry of Discharge between Sunwest and the Schmalenbergs, granting the Debtors' discharge and ordering that "any determination or award of an entitlement to attorneys' fees and costs awarded in any subsequent action filed by Debtors, in favor of Sunwest Bank or Timberland Bank, whether arising out of a prepetition contract or otherwise, are excepted from said discharge."  ECF No. 607 (Bankr. Case No. 12-45274).

**January 30, 2020:**  The Schmalenbergs' bankruptcy case is re-closed.

**April 28, 2020:** Sunwest files a Motion for Judgment on the Pleadings, seeking dismissal of the Schmalenbergs' complaint with prejudice.

**May 26, 2020:** The Court enters stipulated order dismissing Timberland Bank with prejudice.

**May 28, 2020:** The Court converts Sunwest's motion to dismiss into a motion for summary judgment to be heard after the parties have an opportunity to conduct limited discovery, the Schmalenbergs have an opportunity to seek to amend their complaint, and both parties have an opportunity to file new summary judgment pleadings and/or motions.

**June 1, 2020:** The Schmalenbergs file a motion to amend complaint.

**July 1, 2020:** After an objection by Sunwest and a contested hearing on June 25, 2020, the Court enters an order granting the Schmalenbergs' motion to amend complaint. ECF No. 58. The Schmalenbergs file a First Amended Complaint ("FAC") the same day. In the FAC, the Schmalenbergs assert one cause of action for "estoppel/waiver or breach of contract and breach of the plan of reorganization."

**July 15, 2020:** Sunwest files an Amended Answer, Defenses, Affirmative Defenses and Counterclaims.

**August 6, 2020:** The Schmalenbergs file a motion for partial summary judgment regarding preconfirmation fees and charges and requesting the Court require Sunwest disgorge the disputed preconfirmation fees and charges.

**August 11, 2020:** The Schmalenbergs file an Answer to Sunwest's Amended Counterclaims.

**August 19, 2020:** Sunwest files a motion for summary judgment, seeking to dismiss the FAC with prejudice.

**September 17, 2020:** The Court hears argument on the parties' cross-motions for summary judgment and takes the matter under advisement.

# III. DISCUSSION AND CONCLUSIONS OF LAW

## A. Introduction.

The party seeking summary judgment bears the burden of demonstrating that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), made applicable by Fed. R. Bankr. P. 7056;[3] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322—23, 106 S. Ct. 2548 (1986). Summary judgment should be granted if, after taking all reasonable factual inferences in the nonmoving party's favor, the court finds that no reasonable jury could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505 (1986). The responding party must present affirmative evidence in order to defeat a properly supported motion for summary judgment. The responding party may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Liberty Lobby*, 477 U.S. at 256.

"'[W]hen simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them.'" *Tulalip Tribes of Wash. v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015) (quoting *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001)); *see also* 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2720 (4th ed.) ("The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard."); *see also ACLU of Nev. v. City of Las Vegas*, 466 F.3d 784, 790—91 (9th

---

[3] Unless otherwise indicated, all chapter, section and rule references are to the Federal Bankruptcy Code, 11 U.S.C. §§ 101—1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001—9037.

Cir. 2006) ("We evaluate each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences.") (citations and internal quotation marks omitted).

**B.    Sunwest's Motion for Summary Judgment.**

In the FAC, the Schmalenbergs assert one cause of action alleging what appears to be three different theories in support of their prayer for relief to have Sunwest disgorge at least $135,000 in fees and costs:  estoppel/waiver, violation of the Confirmation Order, and breach of contract of the Confirmed Plan, for failure to promptly produce full payoff amounts including accrued postpetition preconfirmation interest and fees.

It is undisputed that during the course of the summary judgment litigation, the Schmalenbergs' theories on which they predicate their motion for partial summary judgment—and defend against Sunwest's cross-motion—have shifted for both preconfirmation and postconfirmation fees.  According to the Schmalenbergs, this is in large part due to new documents provided during discovery.  Based on the representations of Schmalenbergs' counsel at the September 17, 2020 hearing and in the Plaintiffs' Reply in Support of Their Motion for Summary Judgment ("Plaintiffs' Reply"), ECF No. 92, the Court understands the Schmalenbergs' final argument regarding preconfirmation fees to be as follows:    The Confirmation Order required Sunwest to promptly provide a current payoff quote of all preconfirmation fees and costs.  While Sunwest *arguably* complied with the Confirmation Order by providing payoff quotes on January 26, 2015[4]—within four months of confirmation—it failed to promptly disclose preconfirmation attorney's fees of $28,426.25,[5] accrued interest

_____

[4] The Demand Statements are in fact dated January 29, 2015.

[5] The $28,426.25 number appears to come from a payment history prepared by Sunwest's counsel listing payments received by the law firm from Sunwest related to the Schmalenbergs' case. The actual amount listed is $28,426.75.  Ellison Decl. Ex. F, ECF No. 65.  The Court notes that this number differs slightly from the number

of $9,543.13 for the Class II-L loan xxxx-5393, and late fees of $5,699.21 for the Class II-I loan xxxx-4012.[6]  As such, they argue Sunwest is estopped from asserting preconfirmation fees in excess of those disclosed at that time.

Regarding postconfirmation fees, the Court understands from the pleadings that the Schmalenbergs assert Sunwest improperly charged postconfirmation attorneys' fees to the secured loans even though those fees arose primarily from litigation relating to the Schmalenbergs' unsecured loans with Sunwest.  The Schmalenbergs contend that to the extent the fees were attributable to the unsecured loan and Sunwest failed to charge them when the Schmalenbergs paid off the unsecured loan, Sunwest must disgorge these fees.[7]

To support its motion for summary judgment, and in defense of the Schmalenbergs' motion for partial summary judgment, Sunwest contends that under the voluntary payment doctrine, the Schmalenbergs are precluded from seeking reimbursement of any amounts they paid off with the secured loans.  Sunwest argues that for this reason, it is entitled to dismissal of the FAC with prejudice.  To the extent Sunwest establishes that the voluntary payment doctrine applies as a matter of law, this will resolve both the Schmalenbergs' motion for partial summary judgment and Sunwest's motion for summary judgment.

---

provided by Sunwest in its Supplemental Interrogatory Responses of $28,461.90.  Ellison Decl. Ex. H, ECF No. 65.  As the difference is minimal and nonmaterial, the Court will rely on the number as stated by Schmalenbergs' counsel for purposes of this decision.

[6] These are the only preconfirmation fees disputed by the Schmalenbergs.

[7] The Schmalenbergs are not seeking summary judgment as to these postconfirmation fees.  Sunwest, however, seeks summary judgment dismissing the FAC entirely.  As discussed subsequently, if the Court concludes that the voluntary payment doctrine applies, Schmalenbergs are precluded from seeking reimbursement of all amounts, incurred both preconfirmation and postconfirmation, paid to Sunwest to payoff the secured loans.  *See Speckert v. Bunker Hill Arizona Mining Co.*, 6 Wn.2d 39, 52 (1940) (holding that money voluntarily paid cannot be recovered on the ground that the claim was illegal or that there was no liability to pay in the first instance.)

The voluntary payment doctrine is a "well-settled" rule in Washington State. *See Maxwell v. Provident Mut. Life Ins. Co. of Philadelphia*, 180 Wash. 560, 567 (1935). Under the voluntary payment doctrine, a person cannot "either by way of set-off or counterclaim, or by direct action, recover back money which he has voluntarily paid with a full knowledge of all the facts, and without any fraud, duress, or extortion, although no obligation to make such payment existed." *Maxwell*, 180 Wash. at 567 (quoting 48 C.J. § 280, pp. 734—736). "This doctrine exists because of 'the stabilizing legal principle preventing payors from disturbing the status quo by demanding reimbursement subsequently of payments made by them voluntarily with full knowledge of [the] facts.'" S*anders v. Washington Mut. Home Loans, Inc. ex rel. Washington Mut. Bank*, 248 F. App'x 513, 516 (5th Cir. 2007) (quoting *Whitehall Oil Co. v. Boagni*, 255 La. 67, 229 So. 2d 702, 705 (1969)). The voluntary payment doctrine is an affirmative defense. *Armer v. OpenMarket, Inc.*, No. C08-1731RSL, 2009 WL 2475136, at *3 (W.D. Wash. July 27, 2009). As such, Sunwest has the burden of proving it applies. *See Kastanis v. Educ. Employees Credit Union*, 122 Wn.2d 483, 493 (1993) (en banc) (holding that the defendant bears the burden of proof where it asserts an affirmative defense). Once the defendant shows the doctrine applies, "the burden shifts to [the Schmalenbergs] to demonstrate that an exception to the voluntary payment doctrine applies." *Bank of N.Y. Mellon Trust Co. v. SFR Invs. Pool 1, LLC*, No. 2:18-cv-00978, 2019 WL 6307606, at *2 (D. Nev. Nov. 25, 2019). "The question whether a payment is voluntary or involuntary is one of law where the facts are undisputed . . . ." *Speckert*, 6 Wn.2d at 52.

Sunwest contends that the Schmalenbergs' claim for disgorgement, for both preconfirmation and postconfirmation amounts and under any legal theory asserted, is prohibited because the Schmalenbergs voluntarily paid the loans in full, with full knowledge of

all of the facts, and without any evidence of fraud or duress. Sunwest relied on such payments in releasing its liens in the collateral. The Schmalenbergs respond by arguing that (1) the voluntary payment doctrine is inapplicable, and (2) if applicable, does not preclude their claim under the facts of this case.

### 1. Schmalenbergs' Arguments that the Voluntary Payment Doctrine is Inapplicable.

The Schmalenbergs challenge the applicability of the voluntary payment doctrine under the law of the case and because the doctrine is not applicable to the claims asserted.

As ruled by the Court at the September 17 hearing, the Schmalenbergs are incorrect that it is the law of the case that the voluntary payment doctrine does not apply. Under the law of the case doctrine, "a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case." *Richardson v. U.S.*, 841 F.2d 993, 996 (9th Cir. 1988). Schmalenbergs assert that this Court ruled that the voluntary payment doctrine does not apply when it allowed the Schmalenbergs to file the FAC. Although the Schmalenbergs are correct that Sunwest objected to the Schmalenbergs' motion to amend the complaint and raised futility as a basis for denying the motion, the Court did not render a ruling on the merits of the voluntary payment doctrine in allowing the amendment. *See Askins v. US Dep't of Homeland Sec.*, 899 F.3d 1035, 1042—43 (9th Cir. 2018) (holding that the law of the case doctrine does not preclude a court from reassessing its own legal rulings in the same case, particularly where a final judgment has not been entered). To the contrary, at previous hearings held in this case, the Court made it clear that the voluntary payment doctrine has relevance to the Court's determination of the legal issues in this case. The voluntary payment doctrine was clearly set forth in Sunwest's answer to the FAC. Amended Answer ¶ 89, ECF No. 60.

The Schmalenbergs further assert that the voluntary payment doctrine does not apply in this case because it is really a violation-of-a-court-order case as opposed to a breach-of-contract case. No matter how the issue is framed, it is undisputed that Washington State contract law applies to interpretation of the Confirmed Plan as incorporated into the Confirmation Order. *See Hillis Motors, Inc. v. Hawaii Auto. Dealers' Assoc.*, 997 F.2d 581, 588 (9th Cir. 1993). It is also undisputed that Washington State has adopted the voluntary payment doctrine. Accordingly, the voluntary payment doctrine is applicable to this case.[8]

## 2. Application to the Facts of this Case.

It is undisputed that the Schmalenbergs paid the amounts it seeks to recover when they paid off the Class II-M loan on May 2, 2018, and the Class II-I and Class II-L loans on August 31, 2018. It is also undisputed that Sunwest released its collateral securing the loans after receiving the payoffs. Despite these undisputed facts, the Schmalenbergs contend that the voluntary payment doctrine should not be applied in this case because the payments were (1) made under "protest," (2) not made with full knowledge of all of the facts, and (3) made under duress.

The record is devoid of any evidence to support the Schmalenbergs' allegation that they made the payments to Sunwest under "protest." It is undisputed that Jan Schmalenberg is a sophisticated business person with extensive experience in the banking industry and was

---

[8] The cases cited by the Schmalenbergs in opposition to application of the voluntary payment doctrine are factually distinguishable and do not control. In *Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.*, 162 Wn.2d 59, 85—86 (2007), the Washington Supreme Court recognized that the voluntary payment doctrine generally is applied in a contract context and determined that the doctrine is inappropriate as an affirmative defense in the Consumer Protection Act ("CPA") context. The Schmalenbergs have not alleged a CPA claim. Rather, the issue here is the Confirmed Plan, which is construed as a contract. In *In re Cascade Roads, Inc.*, 34 F.3d 756, 760 (9th Cir. 1994), the Ninth Circuit Court of Appeals determined that an appeal was not moot even though the appealing party had already paid a judgment in full. The voluntary payment doctrine was not an issue before the Ninth Circuit. Moreover, the Confirmation Order, while a court order, contains terms of the Confirmed Plan—again, construed as a contract—on which the Schmalenbergs base their FAC.

represented by counsel throughout the time period at issue. It is also undisputed that the payoffs were completed without any reservations of rights.[9] Although the Schmalenbergs raised concerns regarding Sunwest's payoff figures at various times, including in the May 25, 2018 letter from the Schmalenbergs' counsel to Sunwest's counsel (Haden Decl. Ex. 17, ECF No. 70) and in the filing of the Declaratory Action, the Declaratory Action was later voluntarily dismissed by the Schmalenbergs just two days prior to the payoffs on the Class II-I and Class II-L loans. Even if the Schmalenbergs could establish that the payments were made under protest, Washington courts hold that "the fact that the person making the payments files a written protest at the time does not change its character." *Speckert*, 6 Wn.2d at 52 (referring to the voluntary/involuntary character of the payment).

The Court further concludes that the record supports and Sunwest has established as a matter of law that the Schmalenbergs paid off the secured loans with full knowledge of all the facts. It is undisputed that the parties' loan agreements contractually obligated the Schmalenbergs to pay attorneys' fees and late fees. Haden Decl. Ex 1, ECF No. 70. It is further undisputed that on July 12, 2016, Sunwest's counsel sent Debtor's counsel a letter about approaching Mr. Schmalenberg to "address[] the outstanding attorneys' fees and costs as part of its secured claim." Haden Decl. Ex 6, ECF No. 70; Donahue Decl. Ex. 2, ECF No. 71. While one subsequent Demand Statement for the Class II-M loan only, dated December 29, 2016, omitted attorneys' fees, there is no dispute that the Schmalenbergs had full knowledge that Sunwest sought to recover the disputed charges as part of its claim as of the time of the January 11 and 24, 2018 Demand Statements. The Schmalenbergs

---

[9] This is in stark contrast to the Confirmed Plan, which specifically included a reservation of rights regarding the unsecured obligation of Sunwest, thereby evidencing the Schmalenbergs' and their counsels' knowledge of the ability to preserve such rights. Confirmation Order 7, ECF No. 446.

acknowledged receipt of these Demand Statements by email dated January 25, 2018. Haden Decl. Ex. 14, ECF No. 70. Execution of the Forbearance Agreement on the unsecured loans took place less than two months after receipt of the Demand Statements and payoff on the Class II-M loan took place approximately three months after receipt of these Demand Statements. The updated Demand Statements provided for the Class II-I and II-L loans dated August 24, 2018, also contained deferred interest, late charges, and attorneys' fees and costs in the final payoff amounts. The Class II-I and Class II-L loans were paid off a week after these final Demand Statements were provided.

The Schmalenbergs' final argument is that the voluntary payment doctrine does not apply because the payments were made under "coercive circumstances." Specifically, the Schmalenbergs assert:

> Here, the Court could certainly find that the last minute assertion of fees in January 2018, eight months before final payoff was due in September 2018, was inappropriate on this basis, because were the Debtors to reopen the bankruptcy case at that point to challenge the newly-disclosed fees, they would lose the very refinancing they were trying [to] protect, thereby putting their discharge at risk.

Plaintiffs' Mot. for Partial Summ. J. 19:5—10, ECF No. 64.

Not only did the Schmalenbergs fail to provide any evidence beyond mere speculation of the alleged consequences they would face if the payments were not made, such allegations even if true, do not rise to the level of duress or business compulsion, nor do they raise a factual issue that would preclude summary judgment. A party seeking to establish duress has the burden of doing so by clear, cogent, and convincing evidence. *In re Welfare of J.N.*, 123 Wn. App. 564, 577 (2004). Proof of more than "reluctance to accept or financial embarrassment" is required and the "mere fact that a contract is entered into under stress or pecuniary necessity is insufficient." *Retail Clerks Health & Welfare Tr. Funds v. Shopland*

*Supermarket*, Inc., 96 Wn.2d 939, 944 (1982) (en banc) (citations omitted).  "Generally, circumstances must demonstrate a person was deprived of his free will at the time he entered into the challenged  agreement in order to sustain a claim of duress." *Retail Clerks*, 96 Wn.2d at 944.  The fact that the Schmalenbergs could potentially lose refinancing opportunities if they reopened their bankruptcy to challenge the disputed amounts is insufficient to establish that the Schmalenbergs were deprived of their free will when they tendered the payments.  It is also irrelevant that the payoffs were due in September 2018.  Although the Schmalenbergs were undeniably cognizant of this deadline, such concerns are again, even if true, insufficient evidence of duress.  "[A] mere threat to exercise a legal right made in good faith is neither duress nor coercion in law." *Pleuss v. City of* Seattle, 8 Wn. App. 133, 137 (1972).  The Schmalenbergs' argument also ignores the fact that the Schmalenbergs did in fact raise challenges to such fees in multiple forums and on multiple occasions.  Despite pursuing such challenges, the Schmalenbergs later voluntarily dismissed the lawsuits and made the payments without filing any additional requests for relief until this adversary proceeding was filed almost a year and a half later.  Accordingly, even if the Schmalenbergs' allegations could be established, the Schmalenbergs are unable to demonstrate that the payments were made under duress.

For each of the reasons stated above, the Court concludes that Sunwest has established as a matter of law that the voluntary payment doctrine prohibits the Schmalenbergs from recovering any amounts paid to Sunwest.  This includes all of the preconfirmation and postconfirmation fees and costs at issue under any theory asserted in the

FAC. Accordingly, Sunwest is entitled to summary judgment dismissing the Schmalenbergs' FAC.[10]

## C. Schmalenbergs' Motion for Partial Summary Judgment.

Even if Sunwest did not establish that it is entitled to summary judgment on the voluntary payment doctrine, the Court concludes that the Schmalenbergs have not established that they are entitled to partial summary judgment as a matter of law on their claim for Sunwest's disgorgement of preconfirmation attorneys' fees, accrued interest on the Class II-L xxxx-5393 loan, and late fees on the Class II-I xxxx-4012 loan. As mentioned above, the Schmalenbergs' legal theories in support of their requested relief have shifted throughout this adversary proceeding. Based on the Schmalenbergs' counsel's argument at the September 17 hearing, the Court understands that the Schmalenbergs now rely solely on estoppel to support their FAC.[11]

The burden is on the moving party to demonstrate it is entitled to summary judgment as a matter of law. *Stanley v. Novartis Pharm. Corp.*, 11 F. Supp. 3d 987, 994 (C.D. Cal. 2014) (citing *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir.1998); *Retail Clerks Union Local 648 v. Hub Pharmacy, Inc.*, 707 F.2d 1030, 1033 (9th Cir.1983)). "The moving party bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact." *Stanley*, 11 F. Supp. at 994 (citing

---

[10] In its pleadings and the [Proposed] Order Granting Sunwest Bank's Motion for Summary Judgment (ECF No. 69-2), Sunwest seeks dismissal of the FAC with prejudice. A grant of summary judgment resolves the issues on the merits and thus is necessarily with prejudice. *See Rivera v. PNS Stores, Inc.*, 647 F.3d 188, 191 (5th Cir. 2011).

[11] In the Plaintiffs' Reply, the Schmalenbergs acknowledge that Sunwest did provide payoff quotes early and often, thereby complying with the terms of the Confirmation Order, albeit "imperfectly." Plaintiffs' Reply 8, ECF No. 92. According to the Schmalenbergs, as represented both in their pleadings and at the September 17 hearing, their breach of contract claim became "obsolete." Plaintiffs' Reply 8:1, ECF No. 92. Based on this concession, and the Schmalenbergs' decision not to pursue the breach of contract theory, the Court concludes that the Schmalenbergs have not established that they are entitled to partial summary judgment for breach of contract.

*Celotex*, 477 U.S. at 323).  "In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party. "If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, 'come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.'" *United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys. in State of Ala.*, 941 F.2d 1428, 1438 (11th Cir. 1991) (quoting *Chanel, Inc. v. Italian Activewear of Florida, Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991) (citing *Celotex*, 477 U.S. at 331 (Brennan, J. dissenting)).

Despite having included estoppel in their FAC, briefing, and oral argument, the Schmalenbergs at no point have set forth the elements required to establish estoppel.  Nor have the Schmalenbergs stated with any particularity what type of estoppel they are relying on in seeking Sunwest's disgorgement of the amounts paid.  As such, the Schmalenbergs have failed to meet their burden on summary judgment.  Nonetheless, the Court concludes that the Schmalenbergs are not entitled to summary judgment under any of the types of estoppel typically raised in the bankruptcy context:  collateral, judicial, equitable, and promissory.

Collateral estoppel is inapplicable to the facts of this case because it is invoked when an issue has already been litigated and decided in a prior proceeding.  *See Stephens v. Bigelow (In re Bigelow)*, 271 B.R. 178 (9th Cir. BAP 2001).  Although the issues raised in the FAC have been the subject of prior legal proceedings, the issues raised in the FAC have not previously been litigated and decided.

Judicial estoppel is an equitable doctrine invoked by a court at its discretion to "'prohibit a party from prevailing in one phase of a case on an argument and then relying on a

contradictory argument to prevail in another phase.'" *Cont'l Cas. Co. v. Chatz as Tr. for CFB/WFB Liquidating Tr.*, 591 B.R. 396, 411 (N.D. Cal. 2018) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)). The Ninth Circuit "invokes judicial estoppel not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of 'general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings,' and to 'protect against a litigant playing fast and loose with the courts.'" *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)). The doctrine of judicial estoppel, however, is an affirmative defense, *Copelan v. Techtronics Indus. Co.*, 95 F. Supp. 3d 1230, 1240 (S.D. Cal. 2015) (citations omitted), thus, it cannot serve as an affirmative theory for relief to support the Schmalenbergs' cause of action against Sunwest. *See Fid. & Guar. Life Ins. Co. v. Albertson*, No. 07cv00045 BTM(LSP), 2007 WL 4224628, at *1 (S.D. Cal. Nov. 26, 2007) (waiver and estoppel are affirmative defenses, not causes of action); Fed. R. Civ. P. 8(c).

Equitable estoppel is unavailable to the Schmalenbergs as a theory of recovery because equitable estoppel also is a defense, not a cause of action.

> The differences between the doctrines can best be explained by observing that promissory estoppel is used to create a cause of action, whereas equitable estoppel is used to bar a party from raising a defense or objection it otherwise would have, or from instituting an action which it is entitled to institute. Promissory estoppel is a sword, and equitable estoppel is a shield.

*Jablon v. United States*, 657 F.2d 1064, 1068 (9th Cir. 1981). *See also McCormick v. Lake Washington School Dist.*, 99 Wn. App. 107, 117 (1999) (equitable estoppel is only available as a defense to claims against enforcement of a contract).

Finally, promissory estoppel, although a cause of action, does not apply where a contract governs. *Westcott v. Wells Fargo Bank, N.A*, 862 F. Supp. 2d 1111, 1116 (W.D.

Wash. 2012) (citing *Klinke v. Famous Recipe Fried Chicken, Inc.*, 94 Wn.2d 255, 261 n.4 (1980)).  Because a confirmed chapter 11 plan is construed as a contract, *Hillis Motors, Inc.*, 997 F.2d at 588, promissory estoppel does not apply in this case.

For the reasons stated above, the Schmalenbergs have failed to identify and establish a theory of estoppel that applies.  As this is the only theory upon which the Schmalenbergs base their claim for preconfirmation fees and costs, the Schmalenbergs have not established that they are entitled to summary judgment as a matter of law, and their motion is denied.  More importantly, as set forth above, all claims for relief contained in the FAC are precluded based on the Court's holding that the voluntary payment doctrine applies.

In their Amended Answer to the FAC, Sunwest asserted two counterclaims against the Schmalenbergs: rescission and unjust enrichment.  Both of these counterclaims appear to be predicated on the Schmalenbergs prevailing on their claim requiring Sunwest to disgorge the disputed fees and costs.   Based on the Court's ruling herein granting Sunwest's motion for summary judgment on the voluntary payment doctrine, Sunwest's counterclaims are now moot.

If a party intends to seek costs and/or attorney's fees, such claim must be made by motion filed no later than 14 days after entry of the judgment in accordance with Fed. R. Civ. P. 54, made applicable to this adversary proceeding pursuant to Fed. R. Bankr. P. 7054.

/// End of Memorandum Decision ///